## J. P. PARTONIER v. P. J. PRETZ.

1. SPECIAL FINDINGS, *When Supporting Judgment.* In an action of replevin, where the jury render a general verdict in favor of the plaintiff, and also make special findings of fact, and the court renders judgment in favor of the plaintiff, the verdict and findings will support the judgment, unless the special findings are so inconsistent with the general verdict as to overturn and destroy its force and effect.

2. SPECIAL FINDINGS, *When Consistent With Verdict.* In such an action, (for the recovery of hogs,) where the general verdict is in favor of the plaintiff, and the special findings show that the defendant took up the hogs on his own premises as strays, and advertised them in S. township, without showing that the hogs were in fact strays, or that they were wrongfully on the defendant's premises, or that they were taken up in S. township: *Held,* That the special findings will not overturn or destroy the force and effect of the general verdict.

*Error from Wyandotte District Court.*

REPLEVIN brought by *Pretz* against *Partonier,* for the recovery of certain hogs. Trial at the July Term, 1879, of

the district court, and judgment for plaintiff. The defendant brings the case here.

*H. L. Alden,* and *J. B. Scroggs,* for plaintiff in error.

*I. B. Sharp,* and *D. B. Hadley,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin brought by P. J. Pretz against J. P. Partonier, for the recovery of some hogs. The action was commenced before a justice of the peace of Wyandotte county, where judgment was rendered in favor of the plaintiff. The defendant then appealed to the district court, where judgment was again rendered in favor of the plaintiff. The defendant then brought the case to this court on petition in error. The jury that tried the case in the district court, rendered a general verdict in favor of the plaintiff below, and against the defendant below, and also made certain special findings of fact. The verdict and findings are as follows:

#### VERDICT.

We, the jury, find for the plaintiff; and find the value of the property to be eighteen dollars.

#### FINDINGS.

1. Did the defendant know whose hogs he had taken up at the time demand was made by the witnesses Goddard and Obermann? *Answer:* Yes.

2. Did the plaintiff offer to pay the cost of taking up the hogs and expenses of keeping them over night? *Ans.* Yes.

3. Were the hogs in question upon premises of said defendent on or about the 1st day of August, 1878? *Ans.* Yes.

4. Did the defendant take up said hogs as strays upon his premises? *Ans.* Yes.

5. Did the defendant advertise said strays by posting up three printed or written notices containing a full description of said strays, in three public places in Shawnee township, Wyandotte county, Kansas, immediately upon taking up the same? *Ans.* Yes.

6. Was the plaintiff, by reason of the notices posted by the defendant and the description of the hogs therein con-

tained, apprised of the whereabouts of the hogs in question?
*Ans.* Yes.

7. Was this action commenced before M. B. Newman, justice of the peace, before the expiration of ten days after the said hogs were taken up and advertised by said defendant?
*Ans.* Yes.

8. Did the plaintiff, before commencing this action, prove his ownership of said hogs before a justice of the peace of Wyandotte county, having first notified the defendant in writing of the time and place, when and where, and the justice before whom said proof would be offered?  *Ans.* No.

9. Was the agreement between the defendant and Robert Martin, to cultivate said field and make a crop thereon, and receive as compensation for his labor a portion of said crop?
*Ans.* It was.

10. What was the agreement between the defendant and Robert Martin concerning the cultivation of said field?  *Ans.* That said Robert Martin was to plow the 60 in three times and split the middles, and receive three-fifths of the crop.

11. Did the plaintiff and defendant enter into an agreement whereby it was agreed that the partition fence between the fields of said parties should be taken away, for the purpose of preparing the land for cultivating a hedge, and that each party should keep his stock from trespassing upon the premises of the other?  *Ans.* Yes.

12. Was there any agreement between the plaintiff and defendant in reference to said fence, and if so, what was the agreement?  *Ans.* There was; that the defendant was to take away the fence, preparatory to cultivating the land for a hedge.

13. Did the defendant, at the time he took up the hogs in question, know to whom said hogs belonged?  *Ans.* Yes.

The only question presented to this court is, whether the foregoing verdict and findings will support the judgment rendered.  That the general verdict, if taken alone, would support and sustain the judgment, will be admitted; for in effect, it finds everything in favor of the plaintiff, and everything against the defendant.  But possibly the special findings may differ from or contradict the general verdict in some particulars, and if they do, they will control and modify, or destroy, the general verdict.  The real question then is, whether the special findings are so inconsistent with the gen-

eral verdict that they will overturn its effect, or destroy its force. We do not think that the special findings are thus inconsistent with the general verdict. They do not question the plaintiff's ownership of the hogs, and we do not think that they contradict his right to the immediate possession of the property, or that the defendant wrongfully detained the same. That the defendant did in fact detain the hogs, is clear; and we do not think that there is anything in the special findings, or elsewhere, that shows that he detained them rightfully; and unless something can be found to show that he detained them rightfully, the judgment of the court below must be considered as correct, for the general verdict found in effect that he detained them wrongfully. The special findings show that the hogs were on the premises of the defendant, that he took them up as strays, and that he advertised them in Shawnee township; but the record does not anywhere show that the hogs *strayed* upon the defendant's premises, or that they were there wrongfully, or against his will. He, or some other person at his instance, may have driven them there. He knew very well whose hogs they were, and they may not have been in any sense strays. Besides, he advertised them in Shawnee township, while there is nothing in the record to show that they were taken up, or were ever even in that township. This suit was commenced in Wyandotte City township. The most of the special findings seem to be irrelevant, for the reason, as we suppose, that nothing was put into the record to explain them. The record is very meager. There is nothing in the record to show that the defendant ever filed any pleading, and no portion of the evidence, or of the instructions of the court to the jury, has been preserved.

The judgment of the court below will be affirmed.

All the Justices concurring.